**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Tabu Nazshon PHILLIPS, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 25, 2014.

Filed June 5, 2014.

Ryan H. Lysaght, Harrisburg, for appellant.

Joseph P. Cardinale, Jr., Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: GANTMAN, P.J., DONOHUE, J., and STABILE, J.

OPINION BY GANTMAN, P.J.:

Appellant, Tabu Nazshon Phillips, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial convictions for persons not to possess firearms and possessing an instrument of crime, unlawful body armor.[1] We vacate and remand for further proceedings.

The relevant facts and procedural history of this appeal are as follows.

Christopher Thomas, a patrol officer with the Harrisburg City Police Department, testified on behalf of the Commonwealth. On the evening of December 22, 2011, Officer Thomas was on duty and patrolling the City of Harrisburg; he was assigned to the entire city for that night as a part of a task force to decrease violent street crimes. At approximately 8:05 p.m. that evening, Officer Thomas was advised that a 911 call was received indicating that a female was screaming for help and that someone was trying to kill her. Based on the call, Officer Thomas was dispatched to 221 North 14th Street.

Upon arrival, Officer Thomas and his partner/supervisor, Corporal Terry Wealand, heard someone yelling and screaming for help. The officers knocked on the door, announced themselves, did not get a response, and proceeded to make entry into the home. The residence was a boarding house, with no one in the common area; instead, the officers found a woman, Jasmine Matthews, in an upstairs bedroom. After walking upstairs and while heading down the hallway, the officers encountered [Appellant]. [Appellant] was breathing rapidly and said, "nothing is going on here." At that point, the officer escorted [Appellant] to the room where Jasmine Matthews was. She was crying, breathing very hard, and had blood coming from her nose and mouth. When [Appellant] entered the room, she appeared agitated and afraid, and started hyperventilating. Officer Thomas observed, in plain view, a handgun under the foot of the bed—a .32 caliber Colt gray top action revolver. Officer Thomas seized the gun, took out the five live rounds that were inside the cylinder, and secured it on his person.

[Appellant] was detained. It was discovered that [Appellant] had a warrant out for his arrest. Consequently, [Appellant] was arrested and a search incident to arrest was performed. In the course of the search, Officer Thomas discovered that [Appellant] was wearing a "ballistics Kevlar vest typically issued to United States military." Officer Thomas testified that "[t]he body armor here was basically for—to shield your abdomen and your vital organs from shrapnel from land mines, grenades, artillery fire, mortar, so forth, so on[,]" and that someone would wear such a vest "[t]o keep from being injured from either gunfire or from a fight or whatever, an altercation." Officer Thomas further testified that there would be no valid purpose for wearing the Kevlar vest outside of shielding one's self from a gun or other weapon. When Officer

---

1. 18 Pa.C.S.A. §§ 6105(a)(1) and 907(c), respectively.

Thomas conducted an inventory search after [Appellant] was placed into central booking, and such search revealed a baggie with eight unfired .32 caliber cartridges, which was found in a pocket of the Kevlar vest. Sergeant Terry Wealand also testified for the Commonwealth. Sergeant Wealand, a Corporal during the incident in question, was riding with Officer Thomas on the evening of December 22, 2011, when they received the domestic violence call. Sergeant Wealand confirmed that the victim at 221 North 14th Street "[w]as obviously upset. She was bleeding from her nose and her mouth, and I remember her dry heaving like she was going to throw up." Officer Wealand also affirmed Officer Thomas's testimony regarding the evidence discovered on or near [Appellant], namely, the revolver, body armor, and ammunition.

The third and final Commonwealth witness at trial was Officer Brian Henry. In addition to the other officers, Officer Henry and Officer Fiore responded to the 911 call on the evening in question, on North 14th Street. When Officer Henry arrived, the scene was already secure, and [Appellant] was in handcuffs and was being escorted out of the building. Officer Henry took custody of [Appellant] and walked him to the transport van, and testified that [Appellant] was wearing the vest that had been introduced into evidence.

(Trial Court Opinion, filed September 20, 2013, at 1–3) (internal citations to record omitted). As a result, the Commonwealth charged Appellant with persons not to possess firearms and possessing an instrument of crime (unlawful body armor), and simple assault.

In May 2012, Appellant filed a *pro se* motion to suppress evidence of the firearm, which the Dauphin County prothonotary forwarded to counsel appointed to defend Appellant. In August 2012, Appellant filed a *pro se* omnibus pre-trial motion that included a motion to suppress, which the prothonotary forwarded to appointed counsel. Appellant filed a motion on October 5, 2012, to proceed *pro se* that he styled as a "motion to withdraw," citing disagreement with appointed counsel's legal strategy. On October 16, 2012, the court held a hearing on Appellant's motion to proceed *pro se*. The court colloquied Appellant and granted his request, with appointed counsel to serve as standby counsel. The court continued disposition of Appellant's remaining motions for another hearing. The suppression hearing occurred on November 7, 2012, before a different judge, who conducted a second colloquy before Appellant participated in the hearing *pro se*, with appointed counsel as standby counsel. The court denied Appellant's motion to suppress. On March 7, 2013, before the commencement of trial, the original jurist conducted another waiver-of-counsel colloquy and permitted Appellant to proceed *pro se* at trial, with standby counsel. A jury trial followed. Appellant participated *pro se* with standby counsel and, at the end of the trial, the jury convicted Appellant on the charges of persons not to possess firearms and possessing an instrument of crime (unlawful body armor). The jury found Appellant not guilty on the charge of simple assault. At sentencing on May 6, 2013, Appellant was represented by counsel. The court sentenced Appellant to an aggregate term of six (6) to fourteen (14) years' incarceration. Appellant timely filed counseled post-sentence motions, which the court denied on June 11, 2013. Appellant timely filed a counseled notice of appeal on July 11, 2013. The court ordered Appellant to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b). Before that deadline had expired, this Court

quashed the appeal as untimely on August 2, 2013.

Appellant filed a counseled application to reinstate the appeal on August 9, 2013, averring errors on the Court of Common Pleas docket and the docketing statement filed with this Court. On August 14, 2013, this Court reinstated the appeal. Appellant subsequently filed his counseled Rule 1925(b) statement *nunc pro tunc*.

Appellant presents two issues for our review:

WHETHER THE TRIAL COURT ERRED BY FAILING TO CONDUCT A COMPLETE AND THOROUGH, ON–THE–RECORD COLLOQUY OF APPELLANT BEFORE ALLOWING HIM TO PROCEED TO HIS SUP-PRESSION HEARING AND TRIAL *PRO SE* IN VIOLATION OF PA. R.CRIM.P. RULE 121, RESULTING IN AN UNKNOWING, INVOLUN-TARY, AND UNINTELLIGENT WAIVER OF HIS RIGHT TO COUN-SEL UNDER THE SIXTH AMEND-MENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE PENNSYLVA-NIA CONSTITUTION?

WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFI-CIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR UNLAWFUL BODY ARMOR WHERE THE COMMONWEALTH FAILED TO PROVE THAT APPELLANT WAS IN THE COURSE OF COMMITTING A FELONY OR ATTEMPTING TO COMMIT A FELONY WHILE WEAR-ING BODY ARMOR AS APPELLANT WAS MERELY COMMITTING A POSSESSORY OFFENSE AT THE TIME AND NO OTHER FELONY?

(Appellant's Brief at 6).

Appellant avers his waivers of counsel at the suppression hearing and at trial were unknowing, involuntary, and unintelligent. Specifically, Appellant asserts that during the first colloquy, on his request to pro-ceed *pro se* (styled as a motion to with-draw), the trial court failed to inquire into subsections (b) through (f) of Rule 121. Likewise, Appellant contends the suppres-sion court subsequently failed to conduct a thorough on-the-record colloquy before the November 7, 2012 suppression hearing. Appellant concedes the March 7, 2013 pre-trial colloquy was "arguably more thor-ough" but maintains the trial court's collo-quy was still deficient in that the court failed to specify the elements of unlawful body armor, in violation of Rule 121(A)(2)(b). Standby counsel informed the trial court that she had reviewed the sentencing guidelines with Appellant, but the court did not review them with Appel-lant on the record, in contravention of Rule 121(A)(2)(c). Appellant insists he proceed-ed to his jury trial *pro se* and without ever being advised of the elements constituting the charge of unlawful body armor or the sentencing guideline ranges he faced. Ap-pellant concludes we should reverse his convictions, vacate the judgment of sen-tence, and remand for a new trial, accom-panied by a thorough on-the-record collo-quy before allowing Appellant to proceed *pro se.* For the following reasons, we agree.

Previously, this Court explained:

"Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Consti-tution." *Commonwealth v. Payson,* 723 A.2d 695, 699–700 (Pa.Super.1999). "Deprivation of these rights can never be harmless." *Id.* The constitutional right to counsel may be waived, but this waiver is valid only "if made with knowl-edge and intelligence." *Id.* at 700 (citing

*Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (1975)).

"In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." *Payson, supra* at 700 (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995)).

Moreover,

> the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer.

*Payson, supra* at 700 (quoting *Commonwealth v. Monica*, 528 Pa. 266, 273, 597 A.2d 600, 603 (1991)). Thus, for this Court "to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right." *Payson, supra* at 700 (citing *Commonwealth v. Hill*, 492 Pa. 100, 422 A.2d 491 (1980)).

*Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa.Super.2004). "When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." Pa.R.Crim.P. 121(c). Rule 121 of the Pennsylvania Rules of Criminal Procedure states in pertinent part:

**Rule 121. Waiver of Counsel**

**(A) Generally.**

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, **at a minimum, shall** elicit the following information from the defendant:

(a) that the defendant understands that he ... has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he ... waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

\*　　\*　　\*

**(C) Proceedings Before a Judge.** When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.

Pa.R.Crim.P. 121(A)(1)-(2)(a)-(f), (C) (emphasis added). In addition to the Rule

121(A) factors, "a waiver colloquy must, of course, always contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy." *Commonwealth v. McDonough*, 571 Pa. 232, 236 n. 1, 812 A.2d 504, 507 n. 1 (2002). Additionally, a trial court must go beyond merely inquiring into a defendant's understanding of the offenses: "[I]t is incumbent on the court to fully **advise** the accused [of the nature and elements of the crime] before accepting waiver of counsel." *Commonwealth v. Clyburn*, 42 A.3d 296, 299 (Pa.Super.2012) (citation and quotation marks omitted) (emphasis added). The court should also inquire about the defendant's age, educational background, and basic comprehension skills. *McDonough, supra*. "The trial judge need not literally be the one to pose the questions to the defendant, but the text of Rule 121(c) requires the judge to ascertain the **quality** of the defendant's waiver." *Houtz, supra* at 123–24 (citing *McDonough, supra* at 238, 812 A.2d at 508) (emphasis added).

 "Regardless of the defendant's prior experience with the justice system, a penetrating and comprehensive colloquy is mandated." *Houtz, supra* at 124 (quoting *Commonwealth v. Owens*, 750 A.2d 872, 876 (Pa.Super.2000)). Further, "The question of waiver must be determined regardless of whether the accused can or cannot afford to engage counsel. Failure to conduct a thorough on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error." *Houtz, supra*. "A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional 'right.' Citizens can waive their fundamental rights in the absence of a colloquy; indeed, waivers can occur by conduct or by implication, as in the case of a criminal trial conducted in absentia after the defendant fails to appear." *Commonwealth v. Mallory*, 596 Pa. 172, 189, 941 A.2d 686, 697 (2008). In other words, "an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, e.g., waiver of a trial, waiver of the right to counsel, waiver of the right to call witnesses, waiver of the right to cross-examine witnesses, waiver of rules-based speedy trial time limits, etc. But the colloquy does not share the same status as the right itself." *Id.* at 190, 941 A.2d at 697. Nevertheless, on-the-record compliance with the applicable procedural rules governing the waiver of a particular right preserves the integrity of the record in the event of a later attack on the waiver.[2] *Id.*

 When reviewing a trial court's basic compliance with the requirements of Rule 121, we do not first apply a "totality

---

**2.** Rule 121 and its colloquy requirements do not apply to situations where the defendant has forfeited the right to counsel. *See Commonwealth v. Kelly*, 5 A.3d 370, 379 n. 7 (Pa.Super.2010) (stating: "For Pennsylvania case law dealing with forfeiture as result of defendant's dilatory conduct, see [*Commonwealth v. Lucarelli*, 601 Pa. 185, 195, 971 A.2d 1173, 1179 (2009)] (defendant appeared without counsel at trial five weeks after the trial court had given defendant access to $20,000 specifically to retain new attorney); *Commonwealth v. Coleman*, 905 A.2d 1003 (Pa.Super.2006) (defendant, who had the financial means to retain counsel, appeared

without counsel on several occasions after having dismissed them or engaged in conduct forcing them to withdraw); *Commonwealth v. Wentz*, 280 Pa.Super. 427, 421 A.2d 796 (1980) (defendant, who was not eligible for court-appointed counsel, appeared without counsel at his arraignment. Although the arraignment judge had already admonished defendant to retain counsel, he appeared at subsequent pre-trial colloquy without counsel and failed to give any reasonable explanation for not retaining counsel)"). As in *Kelly*, we recognize the present case differs from *Lucarelli*, *Coleman*, and *Wentz* in that Appellant here was eligible for court-appointed counsel.

of the circumstances" test.[3] *See Houtz, supra* at 125 (citing *Commonwealth v. Brazil*, 549 Pa. 321, 701 A.2d 216 (1997); *Payson, supra*). In this context, we look at the totality of the relevant circumstances only after we decide the trial court has met the minimum requirements of Rule 121, to determine whether the defendant's waiver of the constitutional right to counsel was a knowing, voluntary, and intelligent waiver. *See Mallory, supra* at 191, 941 A.2d at 698. "[A] judge's thorough inquiry into the accused's appreciation of both [the right to counsel and the right to represent oneself] must be used in certain summary proceedings, at trial, guilty plea hearings, sentencing, and every 'critical stage' of a criminal proceeding." *Commonwealth v. Baker*, 318 Pa.Super. 19, 464 A.2d 496, 499 (1983). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Commonwealth v. Johnson*, 574 Pa. 5, 13, 828 A.2d 1009, 1014 (2003). *See generally Commonwealth v. D'Amato*, 579 Pa. 490, 516, 856 A.2d 806, 822 (2004) (defining "critical stage of a criminal proceeding" as any stage "at which substantive rights may be preserved or lost").

██ Instantly, the court conducted three waiver of counsel colloquies in this case. The first colloquy occurred on October 16, 2012, at a hearing on Appellant's motion to proceed *pro se*. During that colloquy, the court investigated only four of the six factors of Rule 121. The court omitted any inquiry on whether Appellant understood there may be certain defenses, which if not raised, would be lost, or whether Appellant understood there may be certain other rights lost, if not timely raised. *See* Pa.R.Crim.P. 121(A)(2)(e), (f). The court failed to advise Appellant of the elements of the offenses charged. *See Clyburn supra*. The court made no inquiry regarding Appellant's age, educational background, or basic comprehension skills. *See McDonough, supra*.

The second colloquy occurred on November 7, 2012, before a different jurist, at the commencement of the suppression hearing. During the second colloquy, the court asked only whether Appellant understood that if he waived his right to counsel, Appellant would still be bound by all the normal rules of procedure, whereas counsel would be familiar with those rules. *See* Pa.R.Crim.P. 121(A)(2)(d). The court did not address any of the other five components of Rule 121 or advise Appellant of the elements of the offenses at issue or engage in any inquiry of Appellant's age, educational background, or basic comprehension skills. *See McDonough, supra; Clyburn supra*.

The third colloquy occurred on March 7, 2013, before the commencement of Appellant's jury trial. During the third colloquy, the trial court inquired as to almost every facet of Rule 121. Notably, however, the court asked standby counsel, rather than Appellant, whether Appellant under-

---

**3.** Under other circumstances, however, a court can initially apply a "totality of the circumstances" test, even when a rule of procedure governs a particular waiver. *See, e.g.,* Pa.R.Crim.P. 590 (governing guilty pleas and stating "court **should** ask questions ..."); *Commonwealth v. Broaden*, 980 A.2d 124, 129 (Pa.Super.2009), *appeal denied*, 606 Pa. 644, 992 A.2d 885 (2010) (reiterating court must examine totality of circumstances surrounding guilty plea to determine if plea is valid). *See also Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52 (2003), *cert. denied*, 545 U.S. 1141, 125 S.Ct. 2956, 162 L.Ed.2d 891 (2005) (reiterating deficient oral guilty plea colloquy does not render plea *per se* invalid; court can consider totality of circumstances surrounding entry of guilty plea to determine defendant's actual knowledge of implications and rights associated with guilty plea).

stood the permissible range of sentences for the offenses charged. *See* Pa. R.Crim.P. 121(A)(2)(c). The court did not elicit this information from Appellant. *Cf.* Pa.R.Crim.P. 121(A)(2) (stating "... the judge or issuing authority, at a minimum, shall elicit the following information from the defendant ..."). Moreover, the court made no inquiry of Appellant to adduce whether he understood the questions posed during the colloquy or further examination into Appellant's age, educational background, or basic comprehension skills, before deciding whether Appellant's waiver of counsel was a knowing, voluntary, and intelligent waiver. *See McDonough, supra.*

Thus, the court omitted several provisions of Rule 121 at the first colloquy and nearly all of them at the second colloquy. The court also failed to elicit directly from Appellant his understanding of the permissible range of sentences for the offenses charged at the third colloquy. The various courts' failures to comply with the minimum requirements of Rule 121 at each of the three colloquies constituted error. *See Mallory, supra; McDonough, supra.* In light of the several courts' failure to meet the minimum requirements of Rule 121 and to question Appellant on the qualitative aspects of his waiver of counsel at multiple critical stages of the proceedings, we are constrained to vacate the judgment of sentence and remand for further proceedings. *See Houtz, supra* (stating application of totality-of-circumstances analysis to flawed waiver of counsel colloquy is disavowed); *Baker, supra* (holding thorough inquiry regarding waiver of counsel is necessary at all critical stages of criminal proceedings).

▮ Next, Appellant challenges the sufficiency of the evidence to sustain his conviction for possessing an instrument of crime, unlawful body armor. The reason for this further analysis is that where the issue presents a challenge to the sufficiency of the evidence, a retrial on this offense would be precluded in the event the issue has merit. *See Commonwealth v. Shaffer,* 763 A.2d 411, 413 n. 2 (Pa.Super.2000) (stating generally successful challenge to sufficiency of evidence would preclude retrial on that offense). Specifically, Appellant contends the legislature intended the offense to mean wearing body armor in the course of committing **violent** felonies which are likely to elicit police gunfire to incapacitate the offender. Appellant claims he was "merely" engaging in a possessory offense, and no other felony, while wearing body armor. Appellant suggests that violent felonies are the felonies likely to draw police gunfire, and the Commonwealth has a strong interest in incapacitating violent criminals before they can commit other acts of violence. Appellant submits he was not engaged in a violent felony likely to draw police fire in an effort to incapacitate him. Appellant states he merely possessed a firearm, and mere possession of the weapon did not suggest he intended to employ it violently in the future or even at all. Appellant reasons: "Given that it was unlikely that Appellant at any time in the future would have employed his gun in a violent, felonious manner, police would have had no reason to incapacitate Appellant. Therefore, the fact that Appellant was wearing body armor was of no consequence to the police, as it clearly did not hinder their ability to detain him." (Appellant's Brief at 29). Appellant argues the Commonwealth failed to prove Appellant possessed the body armor with the intent to commit a felony that would necessitate incapacitation by shooting; the only felony Appellant allegedly committed while wearing body armor was possession of a firearm. Appellant maintains that none of the circumstances surrounding

Appellant's possession of the firearm indicated he intended to commit a violent felony, and he was not charged with any violent felony while wearing body armor. Appellant concludes the evidence was insufficient to sustain his conviction for unlawful body armor. We disagree.

Appellate review of a claim challenging the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones,* 874 A.2d 108, 120–21 (Pa.Super.2005) (quoting *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003)).

The Pennsylvania Crimes Code defines the offense of possessing instruments of crime in relevant part as follows:

**§ 907. Possessing instruments of crime**

**(a) Criminal instruments generally.—** A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

**(b) Possession of weapon.—**A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

**(c) Unlawful body armor.—**A person commits a felony of the third degree if in the course of the commission of a felony or in the attempt to commit a felony he uses or wears body armor or has in his control, custody or possession any body armor.

**(d) Definitions.—**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Body armor."** Any protective covering for the body, or parts thereof, made of any polyaramid fiber or any resin–treated glass fiber cloth or any material or combination of materials made or designed to prevent, resist, deflect or deter the penetration thereof by ammunition, knife, cutting or piercing instrument or any other weapon.

**"Instrument of crime."** Any of the following:

> (1) Anything specially made or specially adapted for criminal use.

> (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

\* \* \*

18 Pa.C.S.A. § 907. Section 6105 of the Crimes Code states in pertinent part:

### § 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms

#### (a) Offense defined.—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). "A person convicted of a felony enumerated under subsection (b) or a felony under the act of April 14, 1972 (P.L. 233, No. 64), [35 P.S. § 780–101 *et seq.*] known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, who violates subsection (a) commits a felony of the second degree." 18 Pa. C.S.A. § 6105(a.1)(1).

■ In response to Appellant's sufficiency claim, the trial court reasoned:

Specifically, [Appellant] claims that his conviction for unlawful body armor is not supported by sufficient evidence because the Commonwealth did not prove that he was "in the course of committing a felony or attempting to commit a felony" while wearing body armor. This [c]ourt concludes that this argument is invalid, as the record reflects that [Appellant] was engaged in the crime of persons not to possess firearms, a second-degree felony, at the time he was wearing the unlawful body armor. The jury found sufficient evidence for [Appellant] to be convicted of persons not to possess firearms . . . .

There was a stipulation whereby [Appellant] acknowledged that he is a person under the statute who is not permitted to legally carry a firearm. As for possession or control of such firearm, the jury properly found that [Appellant] had the intent and power to control the .32 caliber revolver, which was found in the bedroom where the police officers found the victim. The victim and [Appellant] were the only two people the officers found in the upstairs apartment. Furthermore, the matching ammunition for the revolver at issue was discovered in the body armor on [Appellant's] person. In light of the officers' testimony outlined above, and evaluating the record in the light most favorable to the Commonwealth, there was clearly sufficient evidence upon which to convict [Appellant] for unlawful body armor.

(Trial Court Opinion at 8–9). We agree. Under the circumstances of this case, Appellant was engaged in committing a felony when he was found wearing the body armor. *See* 18 Pa.C.S.A. §§ 907(c), 6105(a)(1). Moreover, the statute prohibiting unlawful body armor requires use or possession, custody or control of the body armor in the course of committing or attempting to commit a felony, but it does not require the felony to be a **violent** felony. *See* 18 Pa.C.S.A. § 907(c); *Commonwealth v. McCoy*, 599 Pa. 599, 609–10, 962 A.2d 1160, 1166 (2009) (stating: "A statute's plain language generally provides the best indication of legislative intent"). Thus, Appellant's persons not to possess firearms conviction satisfied the felony requirement of his body armor conviction. Therefore, Appellant's challenge to the sufficiency of the evidence for his conviction of possessing an instrument of crime, unlawful body armor, merits no relief.

Based upon the foregoing, we hold the evidence was sufficient to support Appel-

lant's conviction for possessing an instrument of crime, unlawful body armor. Nevertheless, in light of the several courts' failure to meet the minimum requirements of Rule 121 and to question Appellant on the qualitative aspects of his waiver of counsel at multiple critical stages of the proceedings, we are constrained to vacate the judgment of sentence and remand for further proceedings.

Judgment of sentence vacated; case remanded for further proceedings. Jurisdiction is relinquished.