J-S45010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALPHONSO VAUGHN, | |
| Appellant | No. 1771 MDA 2014 |

Appeal from the Judgment of Sentence September 23, 2014
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0000391-2013

BEFORE:  BOWES, WECHT, AND FITZGERALD * JJ.

MEMORANDUM BY BOWES, J:                    **FILED AUGUST 14, 2015**

Alphonso Vaughn appeals from the judgment of sentence of nine years and two months to twenty-five years incarceration imposed by the trial court after a jury found him guilty of possession with intent to deliver ("PWID") heroin, delivery of heroin, possession of heroin, resisting arrest, and possession of drug paraphernalia.  We vacate the judgment of sentence and remand for a new trial.

The trial court recounted the salient facts as follows.[1]

---

[1]  The trial court opinion refers to Appellant as Vaughan rather than Vaughn. Appellant in his own *pro se* filings spelled his last name as Vaughan, however, the caption of the case was entitled **Commonwealth v. Vaughn**.

[*]  Former Justice specially assigned to the Superior Court.

On February 12, 2013, Ami Davis (hereinafter "the C.I."), a third floor resident of 1201 Capouse Avenue in Scranton, met with Detectives Harold Zech and John Munley of the Lackawanna District Attorney's Office at a local Wendy's restaurant to "offer information to try and help her boyfriend get out of jail on bond." According to her, this "information" was that somebody in the building named "Pee Wee," identified at trial Defendant Vaughan, "was selling heroin." Based on this information, Detectives Zech and Munley "began to initiate what they call a controlled purchase where the C.I. would be buying the narcotics under their control." The C.I. testified that she was provided with $50 from the detectives "to purchase three bags of heroin."

When they arrived at 1201 Capouse Avenue, the C.I. and the detectives gained entry due to the fact that she "had a key" and "lived there," so she simply "opened the door and let [herself and the detectives] in." Detective Zech explained that his role at that point "was to follow the C.I., to accompany her to Room 304 where she explained to me that Mr. Vaughan would be waiting for her to sell her the narcotic." To initiate the buy, the C.I. said, "I just told Vaughan that I wanted something and then when I went in there, I asked him if he would give me three for $50 and he said yes." She described the controlled buy as follows:

> We had entered the building and one of the detectives followed me up the steps and one of the other detectives went up the back stairwell. I had went and knocked on the door and one of the detectives were [sic] able to see the door when I had knocked on it. He had opened the door, he went in. I had given him the money and received the three bags of heroin and then I was like in there for like maybe two seconds and turned around and went out. I handed the detective the heroin and then walked down the steps and both detectives—well, the one detective was right behind me and we all met out in the hallways and we went out together.

Detective Zech corroborated the C.I.'s testimony by stating:

> I observed the C.I. began [sic] to walk down the hallway, get to Room 304 and knock on the door. Within moments I view Mr. Vaughan wearing jeans and a dark colored

sweatshirt invite her in. The door closes. I walk down the hallway and used my cell phone to snap a photograph of the door which is marked in paint 304.

. . .

Within a minute of the C.I. entering this room, 304, she then exited and returned to me. We left. When she reached me, we began to go down the staircase and she surrendered to me three bags, glassine bags, of suspected heroin. And the stamp on the bags read Keisha, and it was stamped in purple ink. And the stamp is commonly used by heroin dealers as a marketing tool for their product.

The three bags were then "field tested and gave positive indication for heroin or opiates."

Upon returning to Wendy's, the C.I. stated that the detectives told her they wanted her "to arrange to buy a large amount of heroin off of Vaughan so that when they when they [sic] had went back that they can—that he would have a large amount of stuff on him." On February 13, 2013, the C.I. had a conversation with Vaughan about the buy and agreed to purchase "a brick of heroin, which is 50 bags." Based on this information, Detective Zech "made application for a search warrant for Room 304 at 1201 Capouse Avenue." After the search warrant's approval by the District Magisterial Court and confirmation from the C.I. that "there was a brick, 50 bags at the very least available," Detective Zech and a team of officers from the Scranton Police Department executed the warrant at "approximately 12:30 in the afternoon." Specifically, Detective Zech and the officers "gained access to the building through using the C.I.'s key . . . ." Finding that the door to Room 304 was open, Detective Zech "entered the threshold of the room and announced, [`]Police, search warrant, get on the ground.[']" After doing so, he viewed a white male in the back of the room, later identified as Joseph Healey, and "Mr. Vaughan standing over him." He said that when he announced his presence and ordered them to get on the ground, "the white male did so, but Mr. Vaughan turned and ran toward me in an aggressive manner." In particular, Detective Zech said that Vaughan "turned and ran at me with a full head of steam to the point

where we're in such close proximity to one another, if he had a weapon or anything on his person, he was going to close the gap very fast, so I deployed a taser into his chest." He further stated that a pocketknife was recovered from "a dresser immediately to the right of us when we entered the doorway," and that Vaughan was coming "directly at where I was standing and the knife was inches away from me."

These points of testimony given by the C.I. and Detective Zech were corroborated by Detective Munley. Detective Munley also testified that, following the taser incident, Detective Zech "asked Alphonso Vaughan if he had any drugs on him," to which "Vaughan said, Yes, I have heroin on me." Thereafter, "Vaughan motioned to where the heroin was and Detective Munley confiscated the heroin out of his pocket." Detective Munley described the search of Vaughan as a 'joint effort," which is consistent with Detective Zech's testimony that he found "in Vaughan's left front pants pocket . . . a sandwich baggie" containing "a suspected brick of heroin wrapped in magazine wrapping," which is "common for large quantities of heroin . . . ." Detective Zech also recovered "12 additional bags rubber banded together inside that sandwich baggie," and "a total of 62 bags of heroin on Vaughan." Moreover, all bags "were stamped Keisha, which matches the stamp on the bags . . . purchased the day before." Detective Zech further testified that he recovered "$258 in currency" from Vaughan, $10 of which was found to be part of the prerecorded "$50 that was used the day prior" during the C.I.'s controlled buy. Detective Munley noted that "two hyp[o]dermic needles, a crack pipe, and a chore boy, which is used to ingest crack cocaine," were also found at the scene." He further testified that "four empty bags of suspected heroin" were found on Healey following his arrest, and that "one of them was stamped Keisha."

Trial Court Opinion, 1/27/15, at 2-5 (internal citations and brackets omitted).

The Commonwealth initially charged Appellant with possession with intent to deliver heroin, conspiracy to deliver heroin, resisting arrest, possession of heroin, and possession of drug paraphernalia. Subsequently,

the Commonwealth amended its criminal information to replace the conspiracy charge with a count of delivery of heroin.

At his preliminary hearing, Appellant waived counsel, and apparently executed a waiver of counsel form consistent with Pa.R.Crim.P. 121.[2] Formal arraignment and a pretrial conference were conducted on April 5, 2013, when Appellant was *pro se*. The court continued the case to permit Appellant time to complete and file a waiver of counsel colloquy for purposes of trial. The court then conducted a hearing on May 6, 2013, and accepted Appellant's completed written waiver colloquy.[3] In addition, the trial court

_____

[2] The comment to Pa.R.Crim.P. 121, which governs waiver of counsel, sets forth,

> It is intended that when the defendant has waived his or her right to counsel before the issuing authority for purposes of the preliminary hearing, such waiver shall not normally act as a waiver of the right to counsel in subsequent critical stages of the proceedings. Therefore, under paragraph (C) it is intended that a further waiver is subsequently to be taken by a judge of the court of common pleas.

Comment to Pa.R.Crim.P. 121; **see also Commonwealth v. Payson**, 723 A.2d 695, 704 (Pa.Super. 1999) (completion of a preliminary hearing waiver of counsel form does not apply at latter proceedings or demonstrate a later knowing, intelligent and voluntary waiver).

[3] Although both parties cite to the transcript from the May 6, 2013 hearing, and Appellant quotes from it at length, the certified record does not contain this transcript. Nonetheless, there is no dispute that the trial court relied on the written colloquy at that hearing and the written colloquy is contained in the record.

appointed standby counsel. Appellant unsuccessfully litigated a suppression motion and a Rule 600 issue.

Thereafter, Appellant proceeded to a jury trial on July 7, 2014. The jury found Appellant guilty of each charge. The court sentenced Appellant on September 23, 2014. Specifically, the court imposed consecutive three year and four month to ten year periods of incarceration for the PWID and delivery counts,[4] to be followed by consecutive sentences of one to two years each for resisting arrest and simple assault, as well as a sentence of six to twelve months for possession of drug paraphernalia. Appellant filed a motion for the appointment of appellate counsel on September 26, 2014, and a timely notice of appeal on September 29, 2014. The court appointed appellate counsel for purposes of this appeal. Appellant now raises three issues for our review.

1. Whether the trial court erred in allowing the Defendant to proceed to trial in a *pro se* capacity and in otherwise failing to conduct a legally sufficient colloquy, pursuant to Pa.R.Crim.P. 121, with the Defendant such that the Defendant did not knowingly, understandingly, voluntarily and intelligently waive his right to counsel under the United States and Pennsylvania Constitutions, thereby warranting a new trial?

2. Did the trial court err and/or abuse its discretion in allowing the Commonwealth, on the eve of trial, to amend the criminal information where the Commonwealth previously denied Defendant access to the identity and/or statements of the

---

[4] PWID and delivery are contained in the same statutory crime. **See** 35 Pa.C.S. § 780-113(a)(3). The counts pertained to two separate acts.

confidential information [sic] upon the representation to the trial court that Defendant was not charged with delivery of a controlled substance thereby depriving Defendant of adequate time to investigate and prepare a defense and, then, receive a fair trial?

3. Did the trial court err and/or abuse its discretion in allowing the testimony of a confidential informant pursuant to Pa.R.E. 404(b), at the time of trial, where the Commonwealth, [sic] originally deprived Defendant disclosure of the identity and/or statements of the confidential informant, so that Defendant might adequately prepared [sic] for trial, thereby depriving Defendant of a fair trial?

Appellant's brief at 5.

Appellant's first contention is that the trial court erred in permitting him to proceed *pro se* without conducting an adequate waiver-of-counsel colloquy. Appellant begins by pointing out that a defendant's waiver of his federal and state constitutional rights to counsel requires a trial court to engage in a probing inquiry to ensure that the individual understands his right to counsel and the consequences of waiving counsel. He continues that there is a presumption against waiver and that the Pennsylvania Supreme Court promulgated Pa.R.Crim.P. 121 to guide trial courts in determining whether a defendant was knowingly, voluntarily, and intelligently waiving his right to an attorney. That rule provides:

**A) Generally.**

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing

authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

(3) The judge or issuing authority may permit the attorney for the Commonwealth or defendant's attorney to conduct the examination of the defendant pursuant to paragraph (A)(2). The judge or issuing authority shall be present during this examination.

**(B) Proceedings Before an Issuing Authority.** When the defendant seeks to waive the right to counsel in a summary case or for a preliminary hearing in a court case, the issuing authority shall ascertain from the defendant whether this is a knowing, voluntary, and intelligent waiver of counsel. In addition, the waiver shall be in writing,

(1) signed by the defendant, with a representation that the defendant was told of the right to be represented and to have an attorney appointed if the defendant cannot afford one, and that the defendant chooses to act as his or her own attorney at the hearing or trial; and

(2) signed by the issuing authority, with a certification that the defendant's waiver was made knowingly, voluntarily, and intelligently.

The waiver shall be made a part of the record.

**(C) Proceedings Before a Judge.** When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.

**(D) Standby Counsel.** When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.

Pa.R.Crim.P. 121.

Appellant acknowledges that he completed a written waiver of counsel colloquy. However, he contends that the colloquy was deficient because it "is devoid of any indication that [he] understood the nature of the charges lodged against him, since the colloquy only expressed that the Defendant understood that he was charged with 'PWID', and makes no mention or reference to the other charges or the elements of any of the charges which the Defendant faced." Appellant's brief at 12-13. Appellant continues by highlighting that the written colloquy did not set forth the permissible range of sentences that he faced and only included his answer that he was aware of what those ranges were. In addition, Appellant asserts that the written

colloquy did not include the maximum sentences he faced and what that total could be if the sentences were to be imposed consecutively.

Appellant submits that the trial court, at the May 6, 2013 waiver of counsel hearing, did not conduct a colloquy. Rather, the court asked Appellant if he had reviewed, completed, and signed the written colloquy. The court also noted that Appellant had represented himself successfully in the past and appointed stand-by counsel. According to Appellant, the trial court failed to "correct any of the deficiencies of the written waiver colloquy." Appellant's brief at 15.

The Commonwealth reiterates the trial court's position that Appellant, who was never represented by counsel, waived this issue by failing to object to the trial court's inadequate oral and written colloquy. With respect to the merits, the Commonwealth highlights that Appellant completed a sixty-four question written waiver colloquy. It maintains that the colloquy contained all of the information required by Rule 121 as well as additional information. It notes that Appellant indicated that he had previously represented himself, was familiar with the rules of criminal procedure, and understood that he would be bound by the same rules and standards as an attorney. Accordingly, the Commonwealth submits that Appellant's waiver was knowing, voluntary, and intelligent.

Initially, we must reject the Commonwealth's waiver position. In **Commonwealth v. Monica**, 597 A.2d 600 (Pa. 1991), the Pennsylvania

Supreme Court ruled that the defendant's failure to object to the lack of an adequate colloquy regarding his waiver of counsel and raise the matter in a post-trial motion or his brief in support of his post-trial motion did not result in waiver. The burden is on the trial court to ensure that it adequately inquires with the defendant regarding his or her waiver of counsel.

Similarly, in **Commonwealth v. Davido**, 868 A.2d 431 (Pa. 2005), in a PCRA appeal, the Supreme Court held that a trial court has a *sua sponte* duty to ensure a proper colloquy is performed when a defendant seeks to represent himself. The **Davido** Court rejected the position that it is incumbent upon counsel to object to a colloquy. If an attorney at the proceeding is not required to object, it would make little sense to require the *pro se* defendant to object. Here, Appellant was never represented by counsel. The trial court and the Commonwealth are mistaken in concluding that Appellant waived the issue.

Having addressed the Commonwealth's waiver position, we proceed to the merits of Appellant's argument. Based on **Commonwealth v. Phillips**, 93 A.3d 847 (Pa.Super. 2014), and case law discussed therein, we are constrained to award a new trial. In **Phillips**, the trial court conducted three separate colloquies. First, the defendant, after filing several *pro se* motions, including two motions to suppress, filed a motion to proceed without his attorney. The court held a hearing and granted Phillips the right to represent himself and appointed standby counsel. Thereafter, at Phillips'

suppression hearing, a different judge also briefly queried him about continuing *pro se*. Thereafter, prior to the start of trial, the initial court again asked Phillips about his waiver of counsel.

In the first colloquy, the trial court asked Phillips about four of the six areas under Rule 121(A)(2). It did not ask if he understood that he might lose or be unaware of certain defenses or advise him of the elements of each offense. Further, the court did not inquire as to Phillips' age and education. During the second colloquy, the court only informed Phillips that he would be bound by the normal rules of procedure. In the last colloquy, the court largely followed Rule 121. However, it asked standby counsel and not Phillips whether he understood the permissible range of sentences. It also failed to question Phillips as to whether he understood the questions in the colloquy or seek his age, educational background, and comprehension skills. This Court determined that, despite the multiple colloquies, the defects in each one warranted a new trial.

Instantly, the trial court did not conduct an oral colloquy of Appellant pursuant to Rule 121. While Appellant did complete a written colloquy, which contained questions covered by Rule 121, as well as additional information, that colloquy did not include the elements of the offenses levelled against Appellant nor did it include the range of sentences he would be subject to or even the maximum sentence possible. Instead, the colloquy included generic questions as to whether Appellant understood these facts.

While Appellant answered yes, the only crime he included in the colloquy was PWID. To the extent that Appellant had represented himself in the past, this Court in **Commonwealth v. Payson**, 723 A.2d 695 (Pa.Super. 1991), although sympathetic to the position, rejected the argument that prior experience with the court system was sufficient to validly waive counsel. **See also Commonwealth v. Lloyd**, 535 A.2d 1152, 1163 (Pa.Super. 1988) *abrogated in part on other grounds by* **Commonwealth v. Brazil**, 701 A.2d 216 (Pa. 1997) ("It is also the law that any shortcoming relative to this colloquy cannot be gauged to the quality of an accused's self-representation nor justified on the basis of his prior experience with the system.").

In light of the governing case law, and the fact that Appellant's written colloquy did not adequately inform Appellant of the sentencing maximums and range of sentences or the elements of the offenses for which he was charged, we are constrained to reverse and remand for a new trial. **See Brazil**, **supra** (rejecting totality of circumstances approach); **Phillips**, **supra**; **Payson**, **supra**. Since precedent results in Appellant being entitled to relief based on his initial claim, we need not address his remaining substantive trial court error positions.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2015