J-S10033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN JOSEPH HIMELRIGHT | : | |
| | : | |
| Appellant | : | No. 1181 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 9, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0002422-2020

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 06, 2022**

John Joseph Himelright appeals from the judgment of sentence imposed following a jury trial in which he was found guilty of: (1) driving, for the fourth time, while his operating privileges were suspended or revoked due to a previous driving under the influence (DUI) conviction; and (2) having counterfeit inspection stickers on his vehicle.[1] For these offenses, in addition to a fine and other costs imposed, Himelright received an aggregate sentence of six to twenty-three months of incarceration. Himelright's counsel has filed a petition seeking to withdraw his representation in conjunction with a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), ***Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981), and ***Commonwealth v. Santiago***,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 75 Pa.C.S.A. § 1543(b)(i), (iii) (subsection implicated by a "third or subsequent violation"), and 75 Pa.C.S.A. § 7122(1), respectively.

978 A.2d 349 (Pa. 2009). After thoroughly reviewing counsel's submissions as well as the record, we grant the petition to withdraw and affirm Himelright's judgment of sentence.

Briefly, a police officer pulled over a green Ford Ranger that was being driven by Himelright. Prior to making the traffic stop, that officer noticed that the vehicle's inspection and emissions stickers appeared to be suspicious, as they were not flat against the windshield and had an incorrect checkered pattern to them. Further investigation yielded a finding that the information on the back of the stickers included erroneous or altered information, specifically pertaining to the vehicle's identification number.

When asked for personal identification, Himelright presented a Pennsylvania identification card. After running Himelright's name through his vehicle's computer system, the officer determined that Himelright's driver's license had been suspended due to a previous DUI conviction.

At trial, Himelright represented himself, but did not testify or call any witnesses. Subsequently, a jury found Himelright guilty of the two aforementioned crimes. When sentencing occurred, the lower court ascertained that Himelright's driving on a suspended or revoked license, which was suspended for DUI-related reasons, amounted to his fourth conviction on that basis. The court then sentenced Himelright to, in the aggregate, six to twenty-three months of incarceration.

Himelright filed no post-trial motion, but instead filed a timely notice of appeal. Counsel elected to submit a statement of intent to file an

***Anders***/***McClendon*** brief rather than a statement of errors complained of on appeal. Correspondingly, the lower court deferred issuance of a substantive opinion pending our review of counsel's ***Anders*** brief.

In the ***Anders*** brief, after concluding that there were no arguable appellate issues, counsel provided an overview of the procedural history of the case, a discussion of Himelright's right to counsel, the sufficiency of the evidence used to convict him, and the legality of the sentence that was imposed. ***See Anders*** Brief, at 11-23.[2] To that end, Himelright has filed no further submissions, either *pro se* or through privately retained counsel.

Prior to addressing the areas illuminated by counsel in the ***Anders*** brief, we must first resolve the outstanding petition to withdraw. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). If there is substantial compliance with the dictates of ***Anders*** and ***Santiago***, we will concurrently address the issues raised in the ***Anders*** brief as well as conduct an independent examination of the record to determine those claims' viability. ***See id***.

To avail oneself of ***Anders***, which is the explicit assertion that withdrawing from representation is appropriate given the frivolousness of any appeal, counsel must:

---

[2] ***See also Anders*** Brief, at 10 (identifying that Himelright "has instructed appellate counsel to appeal on the basis that the changing paperwork he originally received was amended to reflect the charges that ultimately came to trial. [Himelright] also wishes to challenge his conviction on the basis that he was denied his right to legal representation.")

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to [the] defendant and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention. The determination of whether the appeal is frivolous remains with the court.

*Commonwealth v. Burwell*, 42 A.3d 1077, 1083 (Pa. Super. 2011) (citation omitted). Moreover, our Supreme Court has imposed further requirements, stating that an *Anders* brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

After the *Anders* requirements have been met, "it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Goodwin*, 928 A.2d at 291 (citation omitted). Likewise, we must independently evaluate the record "to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted).

A review of counsel's *Anders* brief leads us to the conclusion that it is in substantial compliance with the technical requirements of *Anders* and

- 4 -

*Santiago*. *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007) (requiring substantial compliance to satisfy *Anders*). After indicating that counsel scoured the record and concluded that any appeal would be frivolous, counsel thereafter provided both a factual and procedural history of this case. Counsel then highlighted potentially appealable areas, some brought forth at the behest of Himelright, himself, and provided complete discussions, coupled with authority, as to why those issues would fail should they be subject to appellate review.

In addition, the record demonstrates that not only did counsel provide Himelright with a copy of the *Anders* brief and petition to withdraw, but counsel also unambiguously made known to Himelright that he had a right to retain new counsel, proceed *pro se*, or file an additional brief containing other potentially meritorious claims. *See* Application for Leave to Withdraw as Counsel, 1/11/22, Ex. A. Accordingly, as the requirements for withdrawing from representation have been met, we proceed to an examination of the record to verify this appeal's frivolousness.

First, in agreement with the *Anders* brief, there was no procedural defect in the way Himelright was charged or the crimes he ultimately faced at trial. Although the original criminal complaint in this matter featured different

subsections than the two he would ultimately be convicted under,[3] those

charges were eventually changed via the issuance of the filing of an

information and/or subsequent amendment to that information.[4] Of further

note, the information and its amendment fully and accurately apprised

Himelright of the fact that one of the two offenses carried with it a mandatory

minimum sentence.

Replicated in full, Pennsylvania Rule of Criminal Procedure 564

establishes that:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564. While, admittedly, the specific charges did change over

time, they are all derivative of the *exact same incident*, which is a permissible

change under Rule 564, provided there is a lack of unfair prejudice.

Additionally, then, we perceive no prejudice to Himelright from the

_____

[3] Originally, Himelright's criminal complaint identified 75 Pa.C.S.A. § 1543(b)(1.1)(ii) and 75 Pa.C.S.A. § 7122(4) as the two crimes he was alleged to have committed. These two subsections were the charges that were held over by the magisterial district judge, to be subsequently altered. The nucleus of facts underpinning the criminal complaint stemmed from the exact same facts that would be utilized at trial, dealing with Himelright's serial driving despite having a suspended license as a result of DUI as well as having counterfeit inspection stickers affixed to his vehicle.

[4] The amendment occurred eleven days prior to trial.

alteration and amendment of charges. Broadly, the crimes he was convicted of fell under the identical sections as the original offenses, which, given the titles of those sections, obviously involve similar elements/themes.

More specifically, we agree that as to the distinctions between the driving on a suspended license subsections, both allege "that a person with a suspended license, DUI-related[,] operated a vehicle. Both are misdemeanors of the third degree. Both involve a mandatory minimum sentence of six months[.]" *Anders* Brief, at 14. As to the inspection sticker fraud versus the original subsection charged, "each alleged fraud concern[s] a certificate of inspection. The distinction did not impact his sentence, nor did it alter the grading of the charge[.]" *Id*., at 15. While the original subsections would have required different proof than the convicted upon subsections, the entire factual basis underpinning the allegations was identical and did not vary over time. Therefore, we cannot discern any kind of unfair prejudice incurred by Himelright as a result of these charge alterations. Stated differently, we see no reason to conclude that the crimes alleged at his jury trial, and known to Himelright via a filed pre-trial information and subsequent amendment, were so materially different from the original set of charges that they unfairly prejudiced him.

Second, we discern no validity to any claim that Himelright suffered from a violation of his right to counsel. As astutely pointed out in the *Anders* brief, Himelright has a constitutional right to counsel, *see, e.g.*, *Gideon v.*

*Wainwright*, 372 U.S. 335 (1963), and the onus in Lancaster County is generally on the Lancaster County Public Defender's office to provide representation on behalf of an indigent person in state-level criminal trial proceedings. *See* 16 Pa.C.S.A. § 9960.6(a)(5). However, Himelright, through his own words, disclaimed any desire to have representation on his behalf.[5] Himelright's rejection of counsel is clearly evident in the record.

> The court started by stating:
>
> You have indicated at the last four times we've met - - at least the last four times we've met, that you wish to represent yourself in this matter. I have asked you to seek counsel or at least get counsel's advice relative to this. That's a personal choice. But do you still wish to go forward without counsel today and represent yourself?

N.T., 8/9/21, at 3-4. Himelright responded: "Yes." *Id*., at 4. Thereafter, the court proceeded to go through a ten-page colloquy and overview of pre-trial and trial proceedings, wherein Himelright, *inter alia*, was instructed that he had "the right to be represented by counsel and the right to have free counsel appointed if [he was] indigent." *Id*. The court then went through all of the nuances that Himelright would face should he elect to proceed in this manner. The court thoroughly laid out the charges against him and range of sentences

---

[5] Apparently, Himelright initially indicated that he intended to retain private counsel. Later, however, when no private counsel materialized and he was asked about the status of his counsel, if any, he indicated to the court that he made too much financially to obtain a public defender. A subsequent inquiry to the correct office did not uncover any completed application, as would have been required.

that he would face for those charges if convicted, identified that Himelright would still be bound by the normal rules of procedure, and highlighted potential weaknesses Himelright may face given that he is proceeding in this manner, such as his overlooking of possible defenses and the potential waiving of issues for appeal purposes.

Pennsylvania Rule of Criminal Procedure 121 indicates that a defendant has the ability to waive his right to counsel, provided that the court elicits an array of information from the defendant. *See* Pa.R.Crim.P. 121(A)(1)-(2). Moreover, the court is required to "ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." *Id*., at 121(C). After an in-depth review of the court's eliciting of information, we conclude that it went into all of the necessary factors and clearly demonstrated Himelright's "ability to understand the questions posed to him during the colloquy." **Commonwealth v. Phillips**, 93 A.3d 847, 853 (Pa. Super. 2014) (citation omitted). The court spent a great deal of time delving into the offenses Himelright was facing, and after covering, in detail, the Rule 121 factors, it strains credulity to find that Himelright did not make a knowing, voluntary, and intelligent waiver of counsel.

Third, the evidence was sufficient to convict Himelright of his two offenses. A sufficiency of evidence claim is reviewed by this Court as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all

reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

Himelright's first offense, driving under a suspended license that was suspended for DUI-related reasons, is defined as:

(i) A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) or the former section 3731, because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3802 or former section 3731 or is suspended under section 1581 (relating to Driver's License Compact) for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon a first conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $500 and to undergo imprisonment for a period of not less than 60 days nor more than 90 days.

(iii) A third or subsequent violation of this paragraph shall constitute a misdemeanor of the third degree and, upon conviction of this paragraph, a person shall be sentenced to pay a fine of $2,500 and to undergo imprisonment for not less than six months.

75 Pa.C.S.A. § 1543(b)(1)(i), (iii).

When the police officer determined Himelright's identity, the officer

searched for Himelright's name on his vehicle's computer and, through the Pennsylvania State Police's network, determined that his license had been "suspended DUI-related." N.T., 8/9/21, at 62. Moreover, Himelright's driving record, from the Pennsylvania Department of Transportation, which also reflected that Himelright's license had been suspended for DUI, was entered into evidence, without objection, as Commonwealth's Exhibit 2. ***See id.***, at 64. At sentencing, in concluding that the present offense "amounted to a fourth offense for conviction purposes," ***id.***, at 90, the court outlined three prior instances where Himelright had been driving while his license had been suspended for DUI-related reasons. Again, no objection was made to the court's basis for imposing a sentence that comported with a "third or subsequent offense". With all of this in mind, we agree with counsel that, based on Himelright's prior record, "the elements of (1) driving (2) with a license suspended, DUI-related (3) as a third or subsequent offense were established beyond a reasonable doubt." ***Anders*** Brief, at 20. As such, the evidence was sufficient to convict him for this crime.

As to the fraudulent inspection sticker charge, that offense identifies that "[a] person is guilty of a misdemeanor of the first degree if the person, with fraudulent intent: (1) alters, forges, or counterfeits a certificate of title, registration card or plate, inspection certificate or proof of financial responsibility" 75 Pa.C.S.A. § 7122(1).

At trial, the officer recognized the specific stickers that formed the basis

for charging Himelright with this offense, and thereafter, they were admitted as Commonwealth's Exhibit 1. *See* N.T., 8/9/21, at 59-60. As stated by the officer, those stickers had not "been altered or tampered with in any other way since [the officer] obtained them[.]" *Id*., at 59. The officer testified that he "observed on the back of [the stickers] that the [vehicle identification] number had been altered, changed[.]" *Id*., at 60. Later, the officer determined that "the altered [vehicle identification] number came back to the vehicle he was driving. The original [vehicle identification] number that was put on by the mechanic was registered to another one of his vehicles." *Id*., at 62.

Much like the first offense, we come to the same conclusion that "the Commonwealth presented sufficient evidence to prove that … Himelright[ was] a person, (2) [whom] altered, forged, or counterfeited (3) an inspection certificate." *Anders* Brief, at 22. Therefore, any appeal on these grounds would have been frivolous.

The fourth and final *Anders* brief's suggested issue is an inquiry into the legality of Himelright's sentence. This section of the brief indicates that Himelright "received the mandatory minimum jail sentence and fine established by statute [at count one – driving on a suspended license, DUI-related suspension]." *Id*., at 22. At count two, based on Himelright's prior record score and offense gravity score, the sentencing guideline worksheets

warranted "a sentence of six to twenty-three months." *Id*., at 23.[6] We find there to be nothing illegal about Himelright's concurrent sentence of six to twenty-three months, which comported with the mandatory minimum statutory requirement and, too, reflected due consideration of Himelright's prior record and the nature of his current actions. Consequently, any challenge in this domain would have been frivolous, as Himelright has not received an illegal sentence.

In summation, after a complete review of the record, we agree with counsel that all of the areas that could potentially provide Himelright with a basis to appeal lack legitimacy and are therefore frivolous. Moreover, an independent review of that same record did not lead to the uncovering of any other non-frivolous issues. *See, e.g.*, *Goodwin*, 928 A.2d at 291. As such, we are constrained to affirm Himelright's judgment of sentence as well as grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judge Murray joins the memorandum.

Judge McLaughlin concurs in the result.

---

[6] As noted by the court, the standard range of sentencing for having an altered, forged, or counterfeit inspection sticker is three to fourteen months. *See* N.T., 8/9/21, at 89.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/06/2022