J-A10035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DASHAUN LAQUINN JAMISON | |
| Appellant | No. 1262 MDA 2013 |

Appeal from the Judgment of Sentence March 25, 2013
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-00000068-2011

BEFORE:  GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED SEPTEMBER 15, 2015**

Appellant DaShaun Laquinn Jamison appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas. We find Appellant represented himself *pro se* at trial without waiving or forfeiting his right to counsel.  We reverse the judgment of sentence and remand for further proceedings.

On November 29, 2010, a criminal complaint charged Appellant with two counts of aggravated assault, two counts of criminal attempt (aggravated assault), and two counts of simple assault.[1]  Police Criminal Complaint at 2-3.  The complaint alleged that on November 18, 2010, Appellant, a prisoner at the State Correctional Institution at Coal Township,

_____

[1] 18 Pa.C.S. § 2702(a)(3), 901(a), and 2701(a)(1), respectively.

assaulted two correctional officers. *Id.* On January 4, 2011, public defender James Rosini represented Appellant at a preliminary hearing. On March 31, 2011, Mr. Rosini filed a motion to withdraw, alleging Appellant failed to cooperate with counsel, insisted counsel file frivolous motions, and requested counsel issue subpoenas to witnesses who would not assist the defense. The motion also stated Appellant requested that Mr. Rosini withdraw. Motion to Withdraw, 3/31/2011, at ¶¶ 2-7. Although the trial court scheduled a hearing on the motion to withdraw for April 21, 2011, it granted the motion on April 15, 2011, ordered the court administrator to appoint new counsel, and cancelled the hearing. Order, 4/15/2011.[2] Following Mr. Rosini's departure, Michael Seward from the Public Defender's Office represented Appellant.

On July 7, 2011, the trial court scheduled Appellant's trial for November 7, 2011. Trial Order, 7/7/2011. The trial court ordered that pretrial motions be filed within 60 days. *Id.* On October 14, 2011, Appellant filed a *pro se* motion for appointment of new counsel. On November 4, 2011, Mr. Seward filed a motion for leave to withdraw from

_____

[2] Appellant, the Commonwealth, and the trial court repeatedly state Mr. Rosini withdrew because he left the Public Defender's Office. N.T., 3/8/2012, at 3, 7; N.T., 5/23/2012, at 3 (stating John Broda was Appellant's second counsel); Opinion, 1/6/2014, at 1 n.2; *Anders* Brief at 9; Appellee's Brief at 3; Appellant's Advocate Brief at 7. Further, the trial court did not rely on Mr. Rosini's motion to withdraw when it found Appellant was not denied his right to counsel. Opinion, 1/6/2012, at 1-2.

representation. On November 10, 2011, Mr. Seward filed an application for a trial continuance because he was awaiting additional discovery. Application for Trial Continuance, 11/10/2011. On January 10, 2012, the trial court scheduled a pretrial conference for February 3, 2012. Criminal Pretrial Order, 1/10/2011.[3] On February 6, 2012, Appellant filed a *pro se* application for a continuance requesting additional time to obtain counsel. Application for Continuance, 2/6/2012. That same day, the trial court appointed John Broda, also from the Public Defender's Office, to represent Appellant.[4]

On February 10, 2012, Mr. Broda filed a motion for leave to withdraw as counsel. On March 8, 2012, the Honorable Robert B. Sacavage conducted a hearing on Mr. Broda's motion. At the hearing, the following occurred:

> THE DEFENDANT: Your Honor, the rationale for Mr. Seward was that he wasn't communicating with me, he was disagreeing as far as receiving certain evidence that I think we would need for trial, he didn't want to go to trial.
>
> THE COURT: So I granted your motion and appointed somebody else for you.
>
> THE DEFENDANT: But I feel as though Mr. Broda – he's from the same office – and as soon as I talked to Mr. Broda, he said him and Mr. Seward had already talked

---

[3] The trial court had issued prior orders scheduling trial and/or pretrial proceedings on various dates in January and February.

[4] This order was dated January 3, 2012, but filed February 6, 2012. It states the trial court "previously granted Defendant's Motion to Remove Counsel/Defense Counsel's Motion to Withdraw." Order, 2/6/2012.

about it. I said I felt as though it's a conflict that he's from the same office. I challenged Mr. Seward on his – his competence and I just feel that it's a conflict of interest.

. . .

MR. BRODA: I don't believe it's the nature of that. Again, I believe it's a personal conflict with Mr. – as [Mr.] Seward's – I don't mean to put words in Mr. Jamison's mouth, but I believe he wasn't happy with Mr. Seward's representation in the way he was handling his case.

THE DEFENDANT: That's correct.

MR. BRODA: So that's –

THE COURT: Why do you think Mr. Broda can't help you?

THE DEFENDANT: Because the conflicts office, I just don't think that they're correctly representing me. And like I said, I feel as though Mr. Seward felt some type of way as far as how I challenged his – you know, his competence. And like I said, as soon as I talked to Mr. Broda, it seemed like they already had discussion about my case already [sic].

THE COURT: Well, I would expect that they would have to, whoever the prior counsel was. In fact –

THE DEFENDANT: No, I mean –

THE COURT: -- the rules of ethics require[] that a lawyer who is assuming the case –

THE DEFENDANT: I don't mean it – I mean, as far as not wanting to take this case to trial, that's the first thing, it don't seem like he had any confidence in it. Like Mr. Seward has already said like this is a loss or its not triable, I should take a plea. They want me to take an open plea. I feel as though it's a conflict in that aspect, that's just how I feel.

. . .

MR. BRODA: I did advise him of my opinion of his defense.

THE DEFENSE: His opinion was the same as Mr. Seward. That's why I feel as though they already talked and Mr. Seward's already, you know, put in his mind that I need to take a plea. His opinion was the same thing, if not exactly what Mr. Seward was saying. That's just how I feel.

THE COURT: Okay.

THE DEFENDANT: I know I can't pick what attorney I have, I understand that, I just want an attorney that's going to represent me. I'm ready for trial. That's the first thing I say, I'm trying to go to trial. I'm not trying to take no plea. So for someone to keep trying to convince me to take a plea — I'm not guilty, why should I plead guilty to something I didn't do.

I also got a problem, Mr. Broda said he's been to trial like fifteen times and only won two. Well, I need a lawyer that's going to represent me and willing — that has experience in trial, that's going to fight for me.

THE COURT: Well, the Court will — and this is your last opportunity to reconsider your decision because I am not inclined to just keep removing lawyers and appointing somebody that you're going to wait us out until you are happy with [sic]. There are two individuals — three individuals, the first one left the case through other employment; the second one, you disagreed with their performance; now, what I'm hearing here is another performance-related argument. So you either have Mr. Broda, or if you don't want him around, I will allow him to withdraw and appoint him as standby counsel and you can represent yourself.

THE DEFENDANT: That's my only choice?

THE COURT: Well, you can take Mr. Broda. I'm not going to appoint another person. But I will assign — if you're going to be representing yourself, I will require him to be in the courtroom, anytime you can reconsider bringing him back and he will be readily available for you. So, do you want him to withdraw?

THE DEFENDANT: I don't want to represent myself, I don't know the law, I guess I'm forced to stay with Mr. Broda.

- 5 -

THE COURT: Mr. Broda, you will continue to – Mr. Broda, I will deny your motion to withdraw.

N.T., 3/8/2012, at 3-8.

On March 23, 2012, the trial court scheduled a pretrial conference for May 4, 2012, jury selection for May 7, 2012, and trial for May 18, 2012. Criminal Pretrial Order, 3/23/2012. On May 7, 2012, the Honorable Charles H. Saylor conducted jury selection for Appellant's trial. At the jury selection, Mr. Broda requested a sidebar conference, which Appellant attended. The following exchange occurred:

MR. BRODA: Yes, Your Honor. Mr. Jamison told me in his letter before and he's telling me again to make a statement to the judge. I mentioned that – he's saying he's not ready to proceed to trial. I mean, judge made a pretrial determination –

. . .

MR. BRODA: Okay. Your Honor, the judge made a determination that the case is ready to go to trial. Mr. Jamison is saying he's not ready to proceed.

THE COURT: And the – well, what's the basis.

MR. BRODA: Well, he's wanting – asking me to file motions and saying he has inmates from other institutions he wants to have subpoenaed and that hasn't been completed for this case to go to trial.

THE COURT: When is the trial scheduled for?

MR. BRODA: May 18th.

THE COURT: So that's 11 days off so we will pick the jury today and whatever motions you – you want to file between now and then, you can do so but we will – I think perhaps many of them can be between now and the 18th, but we'll proceed today.

N.T., 5/7/2012, at 3-4. The jury selection briefly resumed before the following exchange occurred at sidebar:

> THE DEFENDANT: I don't understand why it wasn't brought up at the pretrial. If it was brought up at pretrial then this all would have been addressed. I would like all this to be on record because of dealing with Mr. Broda.
>
> I requested Mr. Broda to file a *habeas corpus* on the grounds that the Commonwealth didn't present enough evidence on the charges held for trial. He failed to do that. I requested Mr. Broda to file an omnibus pretrial motion[] requesting an appointment of an investigator for this case. He failed to do that. Dismiss all the charges and information. He failed to do that. Sequester enough evidence. He failed to do that.
>
> Continuously prepare for trial, he's failed to do that. I requested Mr. Broda to file a subpoena for [personnel] files of all officers and CO's that would testify in this case to prepare for my defense.
>
> THE COURT: Let me – you're reading from something, right?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: How about if you just submit that?
>
> THE DEFENDANT: What?
>
> THE COURT: How about if you just submit that?
>
> THE DEFENDANT: This is a rough draft, Your Honor. It's just a rough draft. I prepared it for pretrial. It's not that long. It's only –
>
> THE COURT: What I told Mr. Broda was we pick the jury and then we'll consider whatever motions he wants to file.
>
> THE DEFENDANT: But he's not filing any. He's telling me –
>
> THE COURT: He has the opportunity to file these motions.

THE DEFENDANT: But he's telling me he's not going to file them, Your Honor.

THE COURT: Well –

THE DEFENDANT: He's told me straight up.

THE COURT: We're going to pick the jury today.

THE DEFENDANT: All right. So if we pick the jury today and then it would be standby and then if we don't get these filed, the things that we're requesting at the time of trial, will it be continued?

THE COURT: We will deal with those all those motions at some point, but we're picking the jury.

THE DEFENDANT: I don't understand that because then with the rules of court I thought these motions have to be filed before – before – seven days before pretrial, which is why I told Mr. Broda to file them. So how is it that we file them between now and a trial?

THE COURT: We'll deal with any other motions at that time. The jury will be picked.

THE DEFENDANT: I would at least like to read the rest of this so that it could be on the record.

THE COURT: Okay. Keep your voice down.

THE DEFENDANT: All right. Where did I stop at? I stopped at Mr. – I was requesting Mr. Broda to file a subpoena for [personnel] files of all officers and CO's that would testify in this case and prepare for a defense. I think I have a right to those files. Mr. Broda failed to do that. He failed to contact me since the denial of the motion for Mr. Broda to withdraw as defense counsel. Mr. Broda has not spoken to –

MR. TOOMEY: What was that last one?

THE DEFENDANT: Mr. Broda has failed to contact me since the denial of the motion to withdraw as he – when we had the motion to withdraw as my defense counsel. Mr. Broda has not spoken with me about any trial strategy.

I requested Mr. Broda to file subpoenas to have any of the officers who can testify for this case. He's failed to do that. And the last one, Mr. Broda has failed to file transportation orders for all the prison witnesses that's needed for trial. I requested Mr. Broda to provide me with a copy of the [b]ill of [p]articulars and he failed to do that.

I filed a motion myself requesting the [b]ill of [p]articulars and I still haven't gotten that.

THE COURT: I understand – is that [President] Judge Sacavage who already ruled this that it's ready for trial?

MR. TOOMEY: Your Honor, we have – we had – he filed a motion that he wanted to represent himself or Mr. Broda to withdraw.

THE DEFENDANT: May I ask –

MR. TOOMEY: And the judge gave him the option of either he's going to have Mr. Broda as his attorney or he could represent himself and have Mr. Broda as standby. He elected at that time – correct me if I'm wrong.

THE DEFENDANT: I elected to keep Mr. Broda because I don't know nothing about the law. But at the same time Mr. Broda is refusing – he's telling me straight to my face that he's not going to file none of these motions.

THE COURT: Did you tell that – at the earlier sidebar with Mr. Broda, didn't you say that [President] Judge Sacavage ruled that this case was ready to go to trial?

MR. TOOMEY: He said it's – he said it's ready for trial. I said, it's an old case. November of 2010 was when the incidents happened and I'm ready for trial. I have my witnesses subpoenaed, Mr. Broda had subpoenaed certain inmates from the State Correctional Institution, I filed a motion [in] limine that I wanted an offer of proof as to what these inmates were going to say because [they're] inmates and it's a security risk for the courthouse to have all these SCI inmates in our county jail and county facilities waiting for testimony. I was coordinating with the Correctional Institution of Coal Township to have a video conference to determine that the admissibility –

THE COURT: But question was [sic] these issues have already been ruled on?

THE DEFENDANT: No, they have not.

MR. TOOMEY: He has not filed any other motions.

THE COURT: There's no –

THE DEFENDANT: And that is because Mr. Broda is refusing to file these motions. How can I prepare my – how can I fight this case if I don't have the records of the officers? This is case is based [sic] solely on the testimony of the officers.

THE COURT: But all the – all the witnesses are being brought in.

THE DEFENDANT: No.

THE COURT: You've subpoenaed everybody and is [sic] ready to go?

MR. TOOMEY: Yes, sir.

THE COURT: And you have some witnesses that you want to subpoena?

THE DEFENDANT: Yes. I have more witnesses. Staff members that were there.

THE COURT: You can do that by May 18th so we can proceed.

THE DEFENDANT: He's telling me no.

THE COURT: Okay. I made –

THE DEFENDANT: Are you going to order him to do that? He's telling me no. Are you going to order him to file the motions that I asked and subpoena the witnesses?

THE COURT: I can't order him to do that. We're here for purposes of jury selection and we're going to proceed with the jury selection. That's all.

N.T.5/7/2012, at 6-12. Following the above exchange, Mr. Broda

represented Appellant at jury selection.

- 10 -

On May 11, 2012, while still represented by Mr. Broda, Appellant filed a "Motion for the Subpoena of Witnesses" and a "Motion for the Subpoena of Documents and Records," and on May 15, 2012, Appellant filed an "Omnibus Pretrial Motion for Relief."

On May 21, 2012,[5] Appellant filed a *pro se* motion to withdraw counsel and Mr. Broda filed a motion to withdraw as counsel. That same day, Appellant filed a motion for continuance. On May 23, 2012, the Honorable William Harvey Wiest held a hearing. The following exchange occurred:

> [THE COURT]: Mr. Jamison, again, on the same day that Mr. Broda filed, May 21st, you filed a handwritten motion to withdraw counsel, I believe, requesting the same thing, that Mr. Broda no longer be involved in your case and that you be allowed to proceed *pro se*; is that correct?
>
> [APPELLANT]: That is correct.
>
> [THE COURT]: Okay. Anything else you would like to say about that?
>
> [APPELLANT]: Well, I was wondering, I was requesting within the motion – I was asking for a new counsel. If that's not for not, then I will proceed *pro se*. I was already shot down once by [President Judge] Sacavage for new counsel, so if I'm going to be shot down again, I'll proceed *pro se*.
>
> [THE COURT]: It's the second counsel you have had. When your counsel is appointed, you don't have the choices that you do if you are hiring counsel on your own.

_____

[5] It appears Appellant's trial was continued from the May 18, 2012 trial date. The certified record, however, does not contain an order continuing the trial or setting a new trial date.

- 11 -

I'm not going to appoint new counsel for you, but I will appoint Mr. Broda to remain as stand-by counsel. You will be conducting your own trial, but he will be in the courtroom, so that if at any point you have any questions you would like to confer with him on, you will have that opportunity. But he will not take an active role in it; only to consult with you.

[APPELLANT]: All right. I understand that. I understand that. Would it be possible that I be appointed another different stand-by counsel? Me and Mr. Broda just don't see eye to eye. He disagree[s] with me on everything.

[THE COURT]: No, sir. Again, this is your second counsel. We have done what we needed to in appointing counsel for you. We do not have to keep appointing new ones.

In addition – I know this is not on the schedule – but you had several motions filed, handwritten motions filed, the 11th of May two of them and one on the 15th of May, entitled motion for subpoena of witnesses, motion for subpoena of documents and records, and the last one omnibus pretrial motion for relief.

[APPELLANT]: That's what I filed for a continuance on.

[THE COURT]: That is part of the omnibus pretrial. I'm going to deny all of these motions on the basis that they are not timely filed. We have a jury selected. We are going to go ahead with the jury trial on Friday. All the witnesses that you subpoenaed, the arrangements have been made for them to be here, so it will not be delayed. It will occur on Friday as scheduled.

[APPELLANT]: I disagree that it is timely filed now to represent myself [sic]. I know I have to – how am I not supposed to be prepared for trial, seeing how Mr. Broda and I disagreed on the motions? You yourself told me you gave me leave of court at jury selection to file the motions.

[THE COURT]: I did not conduct jury selection.

MR. TOOMEY: It was Judge Saylor.

MR. JAMISON: He gave me leave of court to file all the motions necessary. That's the reason I filed them myself, because Mr. Broda refused to file them.

. . .

THE COURT:  So all these motions are going to have to be ruled upon?

. . .

[THE COURT]:  Are you prepared, Mr. Jamison, to defend those motions or to present those motions and any testimony required with them now?

[APPELLANT]:  No, I am not, Your Honor.

. . .

THE COURT:  After consideration with my law clerk and the statement made by Judge Saylor at the time of jury selection, I'm going to grant [Appellant] an opportunity to present his motions.  We will schedule a half day for it as soon as possible.  Of course, you will have notice of when that half day is going to be.  It probably will not be until sometime next month.

Of course, that means a delay in the trial.

N.T., 5/23/2012, at 2-5.

Appellant filed additional *pro se* pre-trial motions.  On August 30, 2012, Judge Saylor held a hearing on Appellant's motions, which he denied.

In an order issued August 31, 2012, Judge Saylor stated:

By way of further explanation, in his Motion [Appellant] has raised issues that are either premature and must be raised at trial, or that are of no relevance to the case presently before the Court.  In addition, [Appellant] appears to be attempting to use the criminal process to disrupt the prison system.  For example, [Appellant] seeks to subpoena for attendance at trial cabinet level Department of Corrections officials.  Also, among his requests is that he be provided statistical data concerning all staff disciplinary hearing and incident logs from 2000 to 2010.

Order, 8/31/2012.

- 13 -

On February 11, 2013,[6] prior to jury selection, the following exchange occurred in the chambers of President Judge Sacavage:

THE COURT:  Now, you have a right to remain silent.  You understand your rights of a trial.  You don't have to put on a defense, you don't have to call any witnesses.  If you choose to present a defense, then – and you choose to testify, your character then comes into –

THE DEFENDANT:  I understand that.

THE COURT:  – issue.  Also the – you have – I think I discussed this with you at an earlier time.  Your decision to represent yourself is up to you.  You're an intelligent, competent adult, and – but you must be responsible and follow the same rules of trial that anyone has to.

THE DEFENDANT:  I understand, sir.

THE COURT:  So –

MR. TOOMEY:  Was there a waiver of his right to have an attorney represent him, a written waiver?

THE DEFENDANT:  I waived my rights in front of –

MR. TOOMEY:  I thought there may have to be a written waiver.

THE DEFENDANT:  Well, I filed the motion myself to withdraw counsel and everything.  I have the motion here, I believe, Your Honor.

THE COURT:  Here's an August 21st, 2012, footnote number one.  Defendant's motion to withdraw counsel was filed May 21st, 2012, is moot as the defendant has elected

_____

[6] Between September 2012 and February 2013, Appellant filed various motions, which Judge Saylor ruled upon in a January 25, 2013 order.  He granted Appellant's motion for communication, denied his motion for reconsideration, denied his motion for disqualification, and granted in part and denied in part his motion for additional juror information questionnaires.  Order, 1/25/2013.  In addition, trial was continued on various occasions.

to represent himself and [Mr.] Broda has been appointed standby.

THE DEFENDANT: Did we have a hearing that day in front of [Judge] Wiest, and he asked me, do I want to represent myself. Because I had filed the motion and then we had the hearing. Remember we had the hearing, and he asked me if I wanted to represent myself, so I understand everything.

THE COURT: I think the District Attorney's asking about – it's a one page written form. The form advises you of your right to counsel. It discusses what an attorney can do for you. I will go over the contents of it at this point.

The Court has to make a decision that you're – has to agree that you should represent yourself because you are making an intelligent, voluntary, competent, knowing decision to do so, and that had never really come into play. My observations of you are that you are competent, intelligent, and you're doing this voluntarily.

An attorney – you had previous attorneys before representing you, so in your experience you have some idea, I take it, as to what attorneys can do for you. Is that correct?

THE DEFENDANT: Yes, I do.

THE COURT: An attorney can help pick a jury, can file motions on your behalf. And this is a 2011 case. There have been many motions filed and disposed of. Your attorney can cross-examine witnesses that are brought against you. An attorney can [negotiate] a plea agreement, could represent you at trial, represent you on appeal, make objections to evidentiary matters, to procedural matters, so that they can be preserved for later review at the appellate court level.

He can make opening statements, closing arguments during the trial, and generally represent you and protect your rights under the constitution at all stages of the proceedings. And you are aware of this?

THE DEFENDANT: Yes.

- 15 -

THE COURT: And there has been attorneys [sic] appointed, and at this juncture Mr. Broda was appointed by this Court in August to act as standby counsel. Correct?

THE DEFENDANT: Yes.

THE COURT: And he is here. He's in the room here at the time. And, Mr. Broda, for the record you are still standby counsel, are you not?

MR. BRODA: Yes, Your Honor.

THE COURT: So you will be sitting in the courtroom behind the defendant.

MR. BRODA: Yes, Your Honor.

THE COURT: If you wish to change your mind, take him on as counsel, you may do so at any time.

THE DEFENDANT: I understand, Your Honor.

THE COURT: I'm satisfied that he can represent himself.

N.T., 2/11/2013, at 10-13.

A jury convicted Appellant of one count of aggravated assault and acquitted him of all other charges. Verdict, 2/25/2013. On March 25, 2013, the trial court sentenced Appellant to three to six years' imprisonment. On April 5, 2013, Appellant filed post-sentence motions, which the trial court denied on May 13, 2013. On July 11, 2013, a letter from Appellant to President Judge Sacavage was docketed.[7] That same day, the trial court issued an order treating the letter as a motion for allowance of appeal *nunc pro tunc*, granting the motion, and ordering the clerk of courts to file

---

[7] The letter stated Appellant filed a notice of appeal on May 28, 2013 and had the prison cash slips as proof of filing.

Appellant's notice of appeal. On August 2, 2013, Appellant filed a *pro se* concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and the trial court issued its Rule 1925(a) opinion on January 6, 2014.

On May 30, 2014, Appellant filed an application for appointment of counsel. On June 18, 2014, this Court ordered that the trial court appoint counsel to represent Appellant on appeal. The trial court appointed counsel on July 21, 2014. On November 14, 2014, counsel filed an **Anders**[8] brief and a motion for leave to withdraw.

The **Anders** brief raised the following issues:

1. Denial of Right to Counsel: The [trial court] erred in not providing counsel to [Appellant] at trial.

2. Excluded Hearsay: The [trial court] erred in excluding certain hearsay evidence which [Appellant] wished to use at trial.

3. Motion to Suppress: The [trial court] erred in not suppressing video footage.

4. Brady Violation: The trial court erred in not sanctioning the Commonwealth for untimely disclosure of certain video footage.

5. Inconsistent Verdict: The guilty verdict should be thrown out as inconsistent with the acquittal on the other charges.

6. Evidence Not in Possession of the Jury: The [trial court] erred in not allowing the jury to possess certain evidence in deliberations.

---

[8] **Anders v. California**, 386 U.S. 738 (1967).

> 7. Weight and Sufficiency of the Evidence: The verdict was contrary to the weight and sufficiency of the evidence.

**Anders** Brief at 6 of 20.

On May 5, 2015, this Court found Appellant's first issue, whether he was denied his right to counsel, was not wholly frivolous. We denied counsel's motion to withdraw and ordered counsel to file an advocate's brief as to this issue. We found the remaining issues raised in the **Anders** brief to be frivolous and, after an independent review of the record, found no additional non-frivolous claims. On June 29, 2015, Appellant filed an Advocate's brief.[9]

Appellant's sole remaining issue maintains that he was denied his right to counsel. We agree.

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution provide a defendant with the right to counsel for his or her defense. **Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178 (Pa.2009) (quoting **Rothgery v. Gillespie County**, --- U.S. ---, 128 S.Ct. 2578, 2583 n. 8, 171 L.Ed.2d 366 (2008) and **Commonwealth v. McDonough**, 812 A.2d 504, 506 (Pa.2002)). The right to counsel,

---

[9] We note with disapproval that counsel filed the advocate's brief on June 25, 2015, more than 45 days following the issuance of this Court's May 5, 2015 memorandum, which required him to file an advocate's brief within 45 days. We further note the Commonwealth did not file a response to Appellant's advocate's brief.

however, is not absolute. *Id.* (quoting *Commonwealth v. Randolph*, 873 A.2d 1277, 1282 (Pa.2005)).

A defendant who seeks court-appointed counsel "does not have a right to choose the particular counsel to represent him." *Commonwealth v. Rucker*, 761 A.2d 541, 542 n.1 (Pa.2000) (citing *Commonwealth v. Moore*, 633 A.2d 1119, 1125 (Pa.1993)). After counsel has been appointed, the defendant cannot "change to other assigned counsel unless a substantial reason exists for the change." *Id.* (citing Pa.R.Crim.P. 316(c)(ii)).

A defendant can waive or forfeit his right to counsel. *Lucarelli*, 971 A.2d at 1178-79. Our Supreme Court has explained:

> Waiver is "an intentional and voluntary relinquishment of a known right." By contrast, forfeiture . . . does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct."

*Id.* at 1179 (internal citations omitted).

If a defendant seeks to waive his right to counsel, "the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." *Commonwealth v. Phillips*, 93 A.3d 847, 852 (Pa.Super.2014) (citing Pa.R.Crim.P. 121(c)). The waiver colloquy must "contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy." *Id.* (quoting *Commonwealth v. McDonough*, 812 A.2d 504, 507 n.1 (Pa.2002)). A trial court must "fully advise the accused [of the nature and elements of the crime] before accepting waiver of counsel." *Id.* at 853 (quoting

- 19 -

***Commonwealth v. Clyburn***, 42 A.3d 296, 299 (Pa.Super.2012) (emphasis deleted and alteration in original). Pennsylvania Rule of Criminal Procedure 121 governs waiver of the right to counsel and provides:

> (2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:
>
>> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>>
>> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>>
>> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>>
>> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
>>
>> (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>>
>> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2). The trial court must further inquire "about the defendant's age, educational background, and basic comprehension skills."

***Phillips***, 93 A.3d at 853 (citing Pa.R.Crim.P. 121(C)). Further, this Court reviews "the totality of the relevant circumstances only after we decide the trial court has met the minimum requirements of Rule 121, to determine whether the defendant's waiver of the constitutional right to counsel was a knowing, voluntary, and intelligent waiver." ***Id.*** at 854.[10]

In ***Lucarelli***, our Supreme Court held that Rule 121 does not apply where a defendant forfeits his right to counsel. 971 A.2d at 1179. The Rule applies only where the defendant waives his right to counsel. ***Id.*** The Court held a defendant forfeits his right to counsel where his "course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so." ***Id.*** It further noted that:

> Upon examining the jurisprudence developed by other jurisdictions regarding forfeiture of the right to counsel, we observe that defendants have been held to have forfeited the right to counsel where they have either engaged in physically abusive and threatening conduct, or have engaged in dilatory conduct. ***See e.g., Minnesota v. Lehman****,* 749 N.W.2d 76, 81-82 (Minn.Ct.App.2008), *review denied,* 2008 Minn. LEXIS 478 (Minn. filed August

---

[10] The Commonwealth concedes the trial court did not conduct a proper colloquy and argues Appellant forfeited his right to counsel. Appellee's Brief at 3 (noting the colloquy did not comply with all requirements of Pa.R.Crim.P. 121). As noted in our prior opinion, the trial court found Appellant's right to counsel was not violated because, based on the totality of the circumstances, his request to proceed *pro se* was "unequivocal." Opinion, 1/6/2012, at 1-2. The trial court reasoned that it "was not obligated to conduct a colloquy, although it in fact did so." ***Id.***

- 21 -

5, 2008) (collecting cases and holding that defendant forfeited his right to court-appointed counsel where defendant attacked and beat the attorney in open court); *Bultron v. State*, 897 A.2d 758 (Del.2006) (holding that defendant forfeited his right to counsel where he engaged in ongoing abuse of his attorney and requiring defendant to proceed *pro se* at trial); *Wilkerson v. Klem*, 412 F.3d 449, 454 (3d Cir. 2005) (holding that a defendant who had been duly notified of the date of his trial, who had been advised to obtain counsel in sufficient time to be ready for trial, and who appeared on the scheduled date without counsel and with no reasonable excuse for his failure to have counsel present, forfeited his right to counsel).

*Id.* at 1179-80.

In *Commonwealth v. Kelly*, this Court found a defendant who was appointed counsel forfeited his right to counsel. 5 A.3d 370 (Pa.Super.2010). We reasoned:

Kelly was a criminal defendant who had been unwilling to cooperate with all three counsel assigned to him; who argued all counsel were incompetent because they refused to argue what he believed was the law; who, the day after his *pro se* motion to withdraw his first guilty plea was granted, filed *pro se* an omnibus pre-trial motion seeking suppression of evidence on a ground the trial court had already addressed (validity of search warrant); who wanted a counsel, but only one who would please him; who treated appointed counsel with disdain; whose trial had been already postponed because he could not agree with assigned counsel (counsel 2); who had been warned by the trial court that failure to cooperate with assigned counsel (counsel 3) would result in him representing himself *pro se* at trial; who sought to have other counsel appointed to him (who would have been counsel 4) and postpone the trial instead of trying to cooperate with counsel 3; and who clearly was not interested in listening closely [to] what [the trial judge] was telling him, consumed as he was in making his point counsel were ineffective and he knew the law better than assigned counsel.

- 22 -

*Id.* at 381-82.[11]

The trial court did not conduct a proper colloquy of Appellant at any stage of the proceedings. Although President Judge Sacavage inquired as to some elements of Rule 121 prior to the February 11, 2013 jury selection, his colloquy was not complete. He did not ensure Appellant understood the nature of the charges, the elements of each charge, or the permissible range

_____

[11] The court in **Kelly** noted the case differed from **Lucarelli** and the other Pennsylvania forfeiture cases because, in **Kelly**, the defendant was eligible for court-appointed counsel. 5 A.3d at 379 n.7.

The **Kelly** court also noted a "hybrid situation" where a defendant loses his right to counsel, stating:

> [T]here is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.
>
> ....
>
> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se.* These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se.* Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

*Id.* at 379 (quoting **United States v. Goldberg**, 67 F.3d 1092, 1100-01 (3d Cir. 1995)).

- 23 -

of sentences for the charges. He did not inform Appellant there were possible defenses that counsel might be aware of which would be permanently lost if not raised or that Appellant had rights that would be lost permanently if not timely raised, and he did not advise Appellant his right to challenge errors would be lost permanently if not timely asserted. N.T., 2/11/2012, at 10-13. Further, the trial court did not inquire about the defendant's age, educational background, and basic comprehension skills. Because the trial court failed to comply with the minimum requirements of Rule 121, and failed to inquire as to Appellant's background, Appellant did not waive his right to counsel. *See Phillips*, 93 A.3d at 855 (vacating judgment of sentence and remanding for further proceedings where trial court failed to meet minimum requirements of Rule 121 and failed to question appellant on qualitative aspects of waiver of counsel at critical stages of proceedings).

Because Appellant did not waive his right to counsel, his constitutional right to counsel was violated unless he forfeited this right. *See Lucarelli*, 971 A.2d at 1179. Appellant filed *pro se* motions to remove two court-appointed attorneys because he disagreed with their assessment of his case, they refused to advance legal arguments Appellant believed had merit, and Appellant believed a conflict of interest existed because they both were from

the Public Defender's Office.[12] There is no evidence, however, that Appellant treated either counsel with disrespect or disdain. Further, although Appellant filed motions that delayed trial, it is not clear that any delay was intentional. *See* N.T., 3/8/2012, at 3-8; N.T., 5/7/2012, at 3-4, 6-12. It appears Appellant may not have known counsel did not file the motions he requested until after the pretrial conference.[13] N.T., 5/7/2012, at 6-12. Nor is there evidence Appellant "engaged in physically abusive and threatening conduct." *See Lucarelli*, 971 A.2d at 1179.[14]

Because Appellant proceeded at trial *pro se*, but did not waive or forfeit his right to counsel, we find his right to counsel pursuant to the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution was violated.

Judgment of sentence reversed. Case remanded for further proceedings. Jurisdiction relinquished.

_____

[12] As noted above, Appellant's first court-appointed counsel filed a motion to withdraw, but the trial court did not rely on this motion when finding Appellant was not denied his right to counsel. Motion to Withdraw, 3/31/2011; Opinion, 1/6/2014.

[13] Although the trial court issued an order stating Appellant was attempting to disrupt the prison system, it made no finding that Appellant was engaging in dilatory conduct during the court proceedings or conduct which could be construed as disdain or disrespect.

[14] Further, there was no waiver by conduct. Appellant did not engage in dilatory tactics or any other misconduct after being warned he would lose his attorney if he engaged in such conduct. *See Kelly*, 5 A.3d at 379.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/15/2015</u>